J-A01043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| IN RE: X.L.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.F.B., MOTHER | |
| | No. 2115 EDA 2024 |

Appeal from the Decree Entered July 16, 2024
In the Court of Common Pleas of Bucks County
Orphans' Court at No(s):  2024-A9034

| | |
|---|---|
| IN RE: X.R.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.F.B., MOTHER | |
| | No. 2116 EDA 2024 |

Appeal from the Decree Entered July 16, 2024
In the Court of Common Pleas of Bucks County
Orphans' Court at No(s):  2024-A9035

BEFORE:  DUBOW, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED FEBRUARY 3, 2025**

C.F.B. ("Mother") appeals from the decrees involuntarily terminating her parental rights to her children, X.L.B. and X.R.B.  Additionally, counsel for Mother, Katrina J. Ihrer, Esquire ("Counsel"), has filed a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009), and petitioned to withdraw.  We grant

Counsel's petition to withdraw and affirm the decrees involuntarily terminating Mother's parental rights.

The trial court provided the following statement of the factual and procedural history:

> Mother, C.F.B., is the only known biological parent of both X.L.B. and X.R.B. (hereinafter "the Children"), twins who were born on April 22, 2023. After reasonable investigation into the identity or whereabouts of the biological father of the Children, no individual was able to be identified. The Children came into the care of the Bucks County Children and Youth Services Agency (hereinafter "the Agency") on July 12, 2023.
>
> The underlying facts of this case are undisputed and were presented at hearing as follows: The Agency became involved with X.L.B. and X.R.B. through prior contact with [Mother] regarding the care of another one of her children. The Agency maintained contact with Mother throughout her pregnancy as well as during the pendency of separate termination and adoption proceedings relating to her other child. The Agency provided Mother with various social and medical services to ensure that she could keep the Children after they were born, despite her struggles with addiction and inadequate housing. Mother was offered services from Penndel Mental Health, Family Services Association, the Young Women's Christian Association (YWCA), Mental Health Developmental Programs, Access Services, Diakon, Maternity Care Coalition, The Council of Southeastern Pennsylvania, and Homeless Outreach through Penndel Mental Health.
>
> On July 12, 2023, approximately three months after the birth of X.L.B. and X.R.B., Mother informed her service providers at Penndel Mental Health and The Council of Southeastern Pennsylvania that she had relapsed and was using methamphetamine regularly. . . . On that same date, the Honorable Jordan B. Yeager entered an Order for Emergency Protective Custody, placing the subject Children in the legal and physical custody of the Agency. On July 17, 2023, a Shelter Care hearing was held, and the Children remained in the custody of the Agency. The Children were then placed together in a traditional foster home.

On August 7, 2023, the Children were adjudicated dependent. On August 11, 2023, a dispositional hearing was held. At the dispositional hearing, it was ordered that the Children were to remain in the custody of the Agency until Mother met specific conditions that would allow her to reunify with the Children. On February 28, 2024, the Honorable Jordan B. Yeager ordered a goal change in both X.L.B.['s] and X.R.B.'s cases from reunification to adoption.

Trial Court Opinion, 9/11/24, at 1-3 (record citations omitted) (capitalization standardized).

At the July 2024, involuntary termination hearing, Kaitlin Howey ("Ms. Howey"), an Agency permanency caseworker, testified the Children were fifteen months old and had been in care in a traditional foster home for approximately twelve months, based on Mother's substance abuse and mental health issues. *See* N.T., 7/8/24, at 16-17, 49, 55. Ms. Howey stated that within one week of the dispositional hearing, Mother was given a plan for regaining custody and was provided the opportunity to meet monthly with five providers. *See id*. at 18-19, 34. Ms. Howey testified Mother voluntarily consented to the adoption of a prior child. *See id*. at 19-20. Ms. Howey testified Mother had a mental health evaluation, but refused to participate in mental health treatment despite frequent urgings and did not take her prescribed mental health medications. *See id*. at 24-26. Ms. Howey testified in June 2024, Mother admitted to daily methamphetamine use but declined treatment saying she had reduced her use and could "stop the drugs on her own;" since the Children's placement, Mother never tested negative on a drug

screen and declined to have outpatient treatment for drug or alcohol abuse. *See id*. at 26-28, 57-58. Concerning mental health treatment, Mother stated, "I'm not doing therapy. F that therapy," and maintained she could cease her drug use whenever she chose. *See id*. at 57. Ms. Howey stated Mother has never brought diapers, food, or clothing for the Children or provided financial support for them, failed to remain in contact with the Agency, had only one in-person visit and one virtual visit with the Children over the course of one year, and arrived late to the in-person visit. *See id*. at 31, 35-37.

Melanie Hockman, a mobile engagement service worker with Penn Foundation, testified the Foundation offers drug , alcohol, and mental health services. She testified Mother was still using methamphetamine but was not receiving any type of treatment. *See id*. at 61-67.

Marlyn Gershman-Gelb, an Agency supervisor, testified Mother and the Children did not have a beneficial bond, and the Children were "quite comfortable" living with foster parents who provided them love and support, wanted to adopt them, and whom the Children regarded as their father- and mother-figures. *See id*. at 84-90, 110-13.

Mother testified she never received a copy of her family service plan. *See id*. at 70. She asserted what she needed to get the Children back was to "[g]et you guys out of my life. I don't need you guys." *See id*. at 72. She claimed she "played the game with you guys" concerning her first child to whom her parental rights had been voluntarily terminated and had no hope

things would be different with the Children. ***See id***. She denied being a "meth head," but admitted she still smoked methamphetamine and asserted she does not need treatment. ***See id***. at 75-77, 80.

When the hearing concluded, the court held its decision under advisement. On July 12, 2024, the trial court entered decrees terminating Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), and (b). Mother filed timely notices of appeal. She and the trial court complied with Pa.R.A.P. 1925. This Court consolidated the appeals, and Counsel filed a petition to withdraw and an ***Anders*** brief.

When counsel files an ***Anders*** brief, this Court may not review the merits of the appeal without first addressing counsel's request to withdraw. ***See In re V.E.***, 611 A.2d 1267, 1275 (Pa. Super. 1992) (extending ***Anders*** principles to appeals involving the termination of parental rights); ***see also In re S.M.B.***, 856 A.2d 1235, 1237 (Pa. Super. 2004) (providing counsel appointed to represent an indigent parent on appeal from a decree involuntarily terminating parental rights may petition this Court for leave to withdraw representation and submit an ***Anders*** brief).

To withdraw, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [***Anders***] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

- 5 -

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*). Counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

We review counsel's *Anders* brief for compliance with the requirements set forth in *Santiago*, 978 A.2d at 361. Under *Santiago*, counsel must

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id*. "Once counsel has satisfied the [*Anders*] requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Commonwealth v. Edwards*, 906 A.2d 1225, 1228 (Pa. Super. 2006) (citation omitted).

Here, counsel's petition to withdraw certifies her conscientious review of the record and determination that Mother has no meritorious issues. Counsel has also filed an *Anders* brief that substantially complies with the requirements set forth in *Santiago*. Counsel's *Anders* brief includes a summary of the procedural history and facts of the case, the issues raised by Mother that arguably support the appeal, and Counsel's assessment regarding why the appeal is frivolous with citations to relevant legal authority. Finally,

Counsel attached to her petition a letter she sent to Mother informing her of her rights. *See Cartrette*, 83 A.3d at 1032; *Millisock*, 873 A.2d at 752.[1] Accordingly, Counsel complied with the requirements of *Anders* and *Santiago*. We therefore conduct our independent review to determine whether Mother's appeal is wholly frivolous.

Counsel's *Anders* brief identifies the following issues for our review:

Did the trial court commit an error of law and abuse of discretion by involuntarily terminating [Mother's] parental rights?

*Anders* Brief at 3.

We review involuntary termination orders for an abuse of discretion, which requires an error of law or a showing of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *See In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021) (citation omitted). In applying this standard, appellate courts must accept the trial court's findings of fact and credibility determinations if they are supported by the record. *Interest of S.K.L.R.*, 256 A.3d 1108, 1123 (Pa. 2021); *see also In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021).

Pennsylvania's Adoption Act ("the Act") governs involuntary termination of parental rights proceedings. *See* 23 Pa.C.S.A. §§ 2101-2938. Subsection 2511(a) provides grounds for involuntary termination of parental rights. If the trial court finds clear and convincing evidence supporting the existence of

---

[1] Mother has not responded to Counsel's *Anders* brief.

one of the grounds for termination set forth in subsection (a), the court must then consider whether termination would best serve the child under subsection (b). *Id*. § 2511(b). This Court need only agree with one of the grounds set forth in subsection (a) to affirm, provided subsection (b) is also satisfied. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004).

In this case, the trial court terminated Mother's parental rights pursuant to section 2511(a)(2), (5), and (b). As we need only agree with the trial court's determination as to any one section of 2511(a), we limit our discussion to sections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * * * *
>
> > (2) The repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * * * *
>
> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(a)(2), (b).

Concerning proof of subsection 2511(a)(2), this Court has stated "[t]he grounds for termination are not limited to affirmative misconduct but concern parental incapacity that cannot be remedied. Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021) (internal citation omitted). Clear and convincing evidence is that which is so clear, direct, weighty, and convincing as to allow the trier of fact to reach a clear conviction, without hesitance, of the truth of the precise facts in issue. *See In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000).

Regarding the definition of "parental duties," this Court has stated:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a Child. A Child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the Child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the Child and a genuine effort to maintain communication and association with the Child.
>
> Because a Child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the Child's life.
>
> ***Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-Child relationship to the best of his or her ability, even in difficult circumstances.*** A parent must utilize all available

- 9 -

> resources to preserve the parental relationship[] and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-Child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the Child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations and quotations omitted) (emphasis added).

The trial court found the Agency met its burden to prove the application of 23 Pa.C.S.A. § 2511(a)(2), by showing Mother's repeated and continued incapacity caused the Children to be without subsistence and parental care. It noted Mother's struggles with drug use and continual refusal to cooperate with the support services offered to her. *See* Trial Court Opinion, 9/11/24, at 6. The court also cited Mother's own testimony, when asked what she needed to do to get the Children back, faulting others, not herself, for her separation from the Children, and claiming she could stop drugs anytime she wanted. *See id*. (citing Mother's testimony she needed to get "you guys" out of her life and that she would then be able to stop using drugs). The court found significant Mother's refusal to make any changes until the court returned the Children to her. *See id*. (citing Mother's testimony "as of right now, I have no reason [to stop using drugs]" because she "played the game" before when she lost custody of her first child, and had no reason to believe anything different would occur this time). The trial court found incredible Mother's testimony she did not know her family service plan and what she needed to

do to regain custody of the Children. *See id*. at 7. The court concluded "[M]other's clear resistance to drug and alcohol counseling and apathy toward her underlying substance abuse evidenced not only her willful lack of cooperation with the Agency, but also her knowing refusal to address her incapacity as a parent." *See id*.

We do not perceive legal error in the trial court's ruling. The trial evidence showed that a plethora of services was offered to Mother to help her with her drug, alcohol, and mental health conditions, and she for the most part declined to avail herself of any, and even declared she continued to use methamphetamine and would not cease doing so. Additionally, the testimony at the termination hearing showed Mother visited the Children only twice in the twelve months they were apart from her (and only once in person), and she failed to provide diapers, clothing, food, or support for them during that entire year. *See* N.T., 7/8/24, at 31, 35-37. That evidence demonstrated Mother left the Children without the care they need and was not capable of, or willing to, rectify that failure. The same evidence demonstrated Mother's unwillingness to manifest the good faith interest and effort that could have shown her ability and desire to resume her parental duties. The evidence thus established the Agency proved the application of section 2511(a)(2). *See A.H.*, 247 A.3d at 443; *B., N.M.*, 856 A.2d at 855. Any claim concerning the application of 23 Pa.C.S.A. § 2511(a)(2) thus would be wholly frivolous.

We next address section 2511(b).  Where the grounds for termination under section 2511(a) are met, the trial court shall then give primary consideration to the developmental, physical, and emotional needs and welfare of the child under section 2511(b).  *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).  The emotional needs and welfare of the child have been interpreted to include intangibles such as love, comfort, security, and stability. *Id*.  The determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child.  *Id.*  The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond.  *Id*.

The evaluation of a child's parental bonds is not always an easy task. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists.  The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (internal citation omitted).  When evaluating a parental bond, "the court is not required to use expert testimony.  Social workers and caseworkers can offer evaluations as well.  Additionally, section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted).  Moreover, a parent's emotional bond with his child, while a major component of the section 2511(b) analysis, is nevertheless only one

of many factors to be considered by the court when determining what is in the best interest of the child:

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent [as well as the] continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (internal citations omitted).

In terminating Mother's parental rights, the trial court concluded that, under section 2511(b), termination best suited the Children's physical, developmental and emotional needs and welfare, in part due to Mother's continued and willful drug use and failure to prioritize or seriously consider the Children's needs. *See* Trial Court Opinion, 9/11/24, at 10-12. The court based this conclusion on evidence Mother had only one in-person and one virtual visit with the Children in twelve months and refused to do more for the Children until they were returned to her; the court also expressly rejected as incredible Mother's testimony the Agency failed to involve her in the Children's lives. *See id*. at 10.

Moreover, the court placed heavy reliance on evidence that the Children were in the care of foster parents who hoped to adopt them and provided them love and care and with whom they had bonded, and in contrast, Mother had not significant parental bond with the Children. *See id*. at 11-12.

We perceive no legal error in the trial court's finding that termination was in the Children's best interests, based on record evidence that in the year following their removal Mother never attended to their physical or emotional needs, and the foster parents, who wanted to adopt them, attended to all their physical and emotional needs. Any claim relating to 23 Pa.C.S.A. § 2511(b) would therefore be wholly frivolous.

Following our independent review, and based on our conclusion that trial court properly terminated Mother's parental rights under section 2511(a)(2) and (b), we agree with Counsel that the appeal from the decrees terminating Mother's parental rights is wholly frivolous.

Decrees affirmed. Petition to withdraw granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/3/2025